# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JONATHAN TORREY DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV459 |
| | ) | |
| SHERIFF PENDERGRASS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a motion to dismiss filed by Defendant Detention Officer Rayford Thompson and Defendant Detention Officer Jerry Hinkle. (Docket Entry 28.) Plaintiff, Jonathan Torrey Duncan, has not filed a response to this motion. This matter is ripe for disposition. For the following reasons, it is recommended that the Court grant Defendants' motion to dismiss.

## I. BACKGROUND

On May 2, 2019, Plaintiff filed this *pro se* action, alleging that Defendants Thompson, Hinkle, and others were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (*See generally* Complaint, Docket Entry 2.) Plaintiff's Complaint also purports to set forth allegations in the nature of state law tort claims for negligence. (*Id.*)

Specifically, Plaintiff alleges that on August 30, 2016, he was transferred from Forsyth County Detention Center ("FCDC") and incarcerated at Orange County Detention Center ("OCDC") in Hillsborough, North Carolina. (*Id.* ¶¶ 1-3.) At this time, Plaintiff was suffering

from chronic malignant pain in his left leg and had a chronic neurological pain disorder. (*Id.* ¶ 4.) During his arrival at OCDC, prison officials received plaintiff's medical records and his medication for his ailments. (*Id.* ¶¶ 3-4.) At the time he arrived, Plaintiff was also suffering from multiple food allergies and was prescribed a "Gastric diet." (*Id.* ¶ 5.) Pursuant to OCDC policy and procedure, all prescription medications were retrieved from Plaintiff during the intake process and placed "onto the nurses [sic] desk." (*Id.* ¶¶ 6-7.) Plaintiff was then placed in a holding cell for approximately 8 hours. (*Id.* ¶ 8.) While in his holding cell, Plaintiff "asked every officer he came into contact with for his pain medications and food he could eat, but each detention officer either ignore[d] his request or told him he would receive it, [sic] once he completed intake." (*Id.* ¶ 10.) At approximately 6:30p.m., Plaintiff was "booked and jail medically screened by Defendant Hinkle." (*Id.* ¶ 11.) During this process, Plaintiff asked Defendant Hinkle for his pain medicine because he was in serious pain, and he also asked for food. (*Id.* ¶¶ 12-13.) In response to Plaintiff's request, Defendant Hinkle told Plaintiff "that only medical staff could . . . prescribe treatments, and he would do his best to have a nurse come and see him concerning his medical needs." (*Id.* ¶ 7 at 12.) Despite Plaintiff's complaints of pain and hunger, he was not seen by medical staff on August 30, 2016. (*Id.* ¶ 8.) As a result, Plaintiff experienced additional pain in his left leg and was mentally agitated due to lack of food. (*Id.* ¶ 13.)

On August 31, 2016, Plaintiff sought a special diet tray and his medication from an intake official prior to and upon returning from a court appearance. (*Id.* ¶¶ 14-18.) Plaintiff specifically told Defendant Thompson that he had not eaten in two days and was in extreme pain. (*Id.* ¶ 19.) Plaintiff did not receive the requested items before or after court, despite

2

Defendant Thompson's statement that "he will [sic] see what he can do after intake was complete and request the nurse to check on [Plaintiff] in his dorm." (*Id.* ¶ 20.) Plaintiff was not provided some treatment until two days later on September 1, 2016. (*Id.* ¶ 23.) At that time, his prescribed medications were terminated for financial reasons without a physical examination by medical prison officials. (*Id.* ¶¶ 24-26.) Plaintiff was seen by medical staff a few days later regarding his chronic pain, but his left leg was not examined. (*Id.* ¶¶ 29-31.) It was later discovered that Plaintiff's left knee pain "was due to a torn anterior cruciate ligament (ACL) . . . that required surgical repair." (*Id.* ¶ 44.) Per Plaintiff's Complaint, Defendants Thompson and Hinkle "were following the policy of Defendant Pendergrass when they denied or delayed providing/ensuring Plaintiff received his prescribed Tylenol and special diet for two days." (*Id.* ¶ 62.) Additionally, Plaintiff's Complaint alleges several further inactions of other defendants as it relates to Plaintiff's medical needs. (*See generally id.*) In his prayer for relief, Plaintiff asks for a declaratory judgment, and compensatory and punitive damages.

On October 4, 2019, Defendants Hinkle and Thompson filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 28.) Because Plaintiff failed to file a timely response, Defendants' motion to dismiss could be granted as a matter of course pursuant to Local Rule 7.3(k). Where a party fails to file a timely response, the motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).

3

Alternatively, the Court recommends that the motion to dismiss be granted because Plaintiff's Complaint fails to allege a claim against Defendants Hinkle and Thompson.

## II. DISCUSSION

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly,* 550 U.S. at 570). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

4

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## A. Deliberate Indifference Claims

**Defendant Hinkle**

Plaintiff purports to bring a claim of deliberate indifference to serious medical needs based on Defendant Hinkle's failure to provide Plaintiff pain medication and a special diet comporting with his allergies. (Compl. ¶ 51.) It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Since *Estelle*, courts have developed a two-part test for evaluating Section 1983 claims alleging Eighth Amendment violations as to medical care; courts first evaluate whether there was evidence of a serious medical need and if so, then consider whether a defendant's response to that need amounted to deliberate indifference. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In the prison context, a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss. In order to prove deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*,

511 U.S. 825, 837 (1994). Deliberate indifference is a subjective standard, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 837-38; *see also Parish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Additionally, the individual defendant must realize his actions were inappropriate as a result of his actual knowledge of risk to the inmate. *Parish*, 372 F.3d at 303. This standard is more than mere negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer*, 511 U.S. at 836.

It is well settled that negligence or medical malpractice are not sufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105-06. "The bottom line is that prison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals." *Pulliam v. Super. of Hoke Correct.*, 1:05CV1000, 2007 WL 4180743 (M.D.N.C. Nov. 20, 2007).

In this case, Plaintiff's own allegations provide support for the dismissal of his deliberate indifference claim against Defendant Hinkle. Plaintiff's allegations indicate that once Defendant Hinkle was made aware of Plaintiff's medical needs and food allergies, he acted responsively by essentially informing Plaintiff that he lacked the authority to dispense pain medication and would "do his best to have a nurse come and see him concerning his medical needs." (Compl. ¶ 7.) This was the only contact Plaintiff had with Defendant Hinkle and it was upon Plaintiff's arrival at OCDC. There are no allegations by Plaintiff that Defendant Hinkle was aware of any serious injury to Plaintiff's leg or aware of any excessive risk to Plaintiff's health and safety. There are also no allegations that Plaintiff's leg injury was so obvious that Defendant Hinkle would have recognized the need for medical care. Based

6

upon the Complaint, Defendant Hinkle only knew that Plaintiff was in pain and was requesting pain medication. However, Plaintiff does not allege that Defendant Hinkle had any particular knowledge about the cause of the pain or the injury associated with the pain. While the refusal by a medical professional to give an inmate any prescribed medication can, in some instances, amount to deliberate indifference, *Carter v. Ulep,* No. 1:13CV1425 LMB/JFA, 2014 WL 3421515, at *3 (E.D. Va. July 10, 2014) (citation omitted), *dismissed*, 585 Fed. App'x. 46 (4th Cir. 2014) (unpublished), Defendant Hinkle was not authorized, as Plaintiff essentially acknowledges in his Complaint, to give Plaintiff medication. Plaintiff has provided no facts showing that Defendant Hinkle did not indeed request that a medical professional see Plaintiff. Dismissal of Plaintiff's deliberate indifference claim is therefore proper as to Defendant Hinkle.

**<u>Defendant Thompson</u>**

Again, Plaintiff's own allegations provide support for the dismissal of his deliberate indifference claim against Defendant Thompson. According to Plaintiff's complaint, Plaintiff had one interaction with Defendant Thompson. This encounter occurred upon Plaintiff's return from court during the intake process on August 31, 2016. (*See* Compl. ¶¶ 14-18.) Plaintiff asked Defendant Thompson "for a diet tray and to see the nurse to have his pain medication." (*Id.* ¶ 18.) He also informed Defendant Thompson "that he had not ate [sic] in two days and was in extreme pain from not receiving his medications and sitting in a small van and on hard steel benches all day." (*Id.* ¶ 19.) Defendant Thompson responded, "that he will [sic] see what he can do after intake was complete and request the nurse to check up on [Plaintiff] in his dorm." (*Id.* ¶ 20.) Plaintiff has not alleged that Defendant Thompson was a

7

medical professional and has in fact stated in his Complaint that Defendant Thompson was a "detention officer." (*Id.* at 5.) According to Plaintiff's Complaint, he was aware that only medical officials could dispense medication and order Plaintiff a diet tray. (*Id.* at 12, ¶¶ 7, 11.) While Plaintiff has alleged that he informed Defendant Thompson that he had not eaten in two days, a condition that if continued could have resulted in extreme injury or death to Plaintiff, he fails to allege facts sufficient to show that Defendant Thompson's actions were unreasonable, reckless, or a conscious disregard of Plaintiff's condition. Although Plaintiff was allegedly deprived of a basic human need such as food, Plaintiff must allege facts showing that the deprivation was the result of Defendant Thompson's deliberate indifference. *James v. Milwaukee County*, 956 F.2d 696, 699-700 (7th Cir. 1992). Facts alleging mere negligence alone will not suffice. *Id.* Per Plaintiff's complaint, Defendant Thompson's authority was limited. (*See* Compl. ¶¶ 7-11 at 12; ¶ 7 at 11.) Given this limited authority, it has not been alleged that Defendant Thompson acted unresponsively or unreasonably. Upon learning of Plaintiff's serious medical condition, Defendant Thompson responded by indicating that he would request that a medical professional check up on Plaintiff. (*Id.* ¶ 20.) Again, Plaintiff has alleged no facts showing that Defendant Thompson did not indeed request that a medical professional see Plaintiff, nor are there sufficient facts alleging that Defendant Thompson was responsible for any delay or interference in treatment for Plaintiff. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (delay or interference in treatment may be deliberate indifference). Dismissal of Plaintiff's deliberate indifference claim is therefore proper as to Defendant Thompson.

### B. Qualified Immunity

Defendants Hinkle and Thompson argue that they are entitled to qualified immunity from Plaintiff's actions where he has failed to allege a constitutional violation. (Docket Entry 29 at 17-18.) Under the doctrine of qualified immunity, Defendants Hinkle and Thompson are "generally shielded from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lilly v. Carter*, No. 1:16CV400, 2017 WL 3017704, at *5 (M.D.N.C. July 14, 2017) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Unless the [P]laintiff's allegations state a claim of violation of clearly established law, [D]efendant[s] pleading qualified immunity [are] entitled to dismissal before the commencement of discovery." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (citation omitted); *see also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) ("Qualified immunity may be raised in a motion to dismiss."). In the instant case, having found Plaintiff has not alleged a claim for a constitutional violation, Defendants Hinkle and Thompson should be entitled to qualified immunity. *See Jackson v. Holley*, 666 Fed. Appx. 242, 244-45 (4th Cir. 2016) (noting that the "conduct about which [plaintiff] complains [did] not amount to an Eighth Amendment violation," thus "[defendant] was entitled to qualified immunity and her motion to dismiss should have been granted by the district court").

### C. Public Officer's Immunity

Finally, Defendants Hinkle and Thompson argue that they are entitled to public officer's immunity as it pertains to the state law tort claims of negligence. (Docket Entry 29 at 18-20.) It is well settled that "jailers are public officials entitled to immunity because they

exercise the power of the State and carry out a statutor[ily delegated] duty." *Evans v. Croft*, 827 S.E.2d 342 (N.C. Ct. App. 2019) (unpublished table decision) (citing *Baker v. Smith*, 224 N.C. App. 423, 434, 737 S.E.2d 144, 151 (2012)). Under the doctrine of public immunity, "a public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Schlossberg v. Goins,* 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000) (internal quotation omitted). Here, to the extent Plaintiff's allegations set forth negligence on the part of Defendants, they are immune from liability. Moreover, since Plaintiff's Complaint fails to allege that Defendants Thompson and Hinkle acted with malice or corruption outside and beyond the scope of their duties, they should be entitled to public officer's immunity.

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motions to dismiss for failure to state a claim (Docket Entry 28) be **GRANTED**. **IT IS FURTHER RECOMMENDED** that this action be dismissed with prejudice.

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　Joe L. Webster
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

February 13, 2020
Durham, North Carolina